**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHONDA REDDEN-DRAKE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RALPH LAUREN CORPORATION.<br><br>Defendant. | Case No. 1:26-cv-4029<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Shonda Redden-Drake, ("Plaintiff") brings this Class Action Complaint against

Ralph Lauren Corporation ("Ralph Lauren" or "Defendant") as an individual and on behalf of all

others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and

to counsels' investigation, and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a civil action brought by a United States citizen and customer of Ralph

Lauren.

2.      In early 2026, it was reported that Defendant, "has relied on raising prices and

reallocating production to regions with lower duty exposure to offset U.S. tariff pressures."[1]

3.      On February 20, 2026, the Supreme Court of the United States ruled that certain

tariffs imposed under the International Emergency Economic Powers Act were illegal.[2]

---

[1] https://www.reuters.com/business/retail-consumer/ralph-lauren-posts-third-quarter-sales-beat-2026-02-05/
[2] https://www.cnbc.com/2026/02/20/supreme-court-trump-tariff-decision-illegal-refunds.html (last accessed Feb. 20, 2026).

4.      Before that ruling, Ralph Lauren imposed tariff-related charges and increased shipping costs on customers, including Plaintiff, based on those now-invalid tariffs.

5.      Plaintiff paid these increased charges as part of shipping costs for goods.

6.      Because the underlying tariffs have been declared illegal, Plaintiff seeks recovery of amounts collected by Defendant that were based on or attributed to those unlawful tariffs.

7.      Plaintiff brings this action on behalf of herself and those similarly situated to recover money wrongfully collected from her and the Class by Defendant under the illegal tariffs and to obtain appropriate relief permitted by law.

## JURISDICTION & VENUE

8.      Plaintiff incorporates the previous paragraphs as if fully alleged herein.

9.      This Court has subject matter jurisdiction over this action under 28 U.S.C.§1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, including Plaintiff, is a citizen of a state different from Defendant.

10.     This Court has personal jurisdiction over Defendant because its principal place of business is in this District. Defendant has also purposefully availed itself of the laws, rights, and benefits of New York.

11.     Venue is proper under 28 U.S.C §1391(b) because Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## PARTIES

12.      Plaintiff incorporates the previous paragraphs as if fully alleged herein.

13.     Plaintiff Shonda Redden-Drake is a citizen of the State of Florida. At all relevant times, Plaintiff has been a resident of Florida.

14.     Defendant, Ralph Lauren, maintains a principal place of business at 650 Madison Ave, New York, NY 10022. Ralph Lauren's registered agent is Ralph Lauren Corporation at 100 Metro Blvd., 4th Floor, Nutley, New Jersey, United States 07110.

## FACTUAL ALLEGATIONS

15.     Plaintiff incorporates the previous paragraphs as if fully alleged herein.

16.     In early 2026, it was reported that Defendant, "has relied on raising prices and reallocating production to regions with lower duty exposure to offset U.S. tariff pressures."[3]

17.     Ralph Lauren's Chief Financial Officer John Picicci stated, "With the higher tariffs that were announced, we did layer in some additional modest adjustments, both for fall and for spring '26," adding that "potentially some further targeted pricing" could be coming.[4]

18.     Additionally, Ralph Lauren's CEO Patrice Louvet stated, "We are assessing additional pricing actions for full-year 2025 and spring of 2026 to mitigate the potential impact of evolving tariffs," on a post-earnings call.[5]

19.     The company's revenue in the quarter ended December 27, 2025, came in at $2.41 billion, above analysts' estimates of a 7.9% rise to $2.31 billion, according to data compiled by LSEG.[6]

---

[3] https://www.reuters.com/business/retail-consumer/ralph-lauren-posts-third-quarter-sales-beat-2026-02-05/
[4] https://finance.yahoo.com/news/ralph-lauren-sends-fans-hard-220614180.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAtTHGOySt7TFWYteQcCYrZXiIytYEfkLTGGqArfLLTjfSZ2YOKz4qnHIWWBnreW1MAMC6ri25BLW39vDlZRMbEjVK3dW7a6N_clwflYYCcs3KjhvXRaVLTusxFNC5Lg7oETWvnXf9p9NnFXY1p2K4SLBju3KWAm6bq8O-4aiiei
[5] https://www.usatoday.com/story/money/shopping/2025/05/23/ralph-lauren-tariffs-price-hikes/83802260007/
[6] https://www.reuters.com/business/retail-consumer/ralph-lauren-posts-third-quarter-sales-beat-2026-02-05/

20.     On December 1, 2025, Plaintiff spent a total of $201.84 at the Polo Factory Store at 4959 International Drive, Orlando, FL 32819. On March 15, 2025, Plaintiff spent $114.33 at the same Polo Factory Store in Orlando, FL. On April 11, 2026, Plaintiff spent $391.22 at the same Polo Factory Store in Orlando, FL. On July 23, 2025, Plaintiff spent $63.67 for a product manufactured by Defendant at Dillard's. On July 1, 2025, Plaintiff spent $349.60 at the Polo Factory Store at 7000 Arundel Mills Circle, Hanover, MD 21076. On January 11, 2025, Plaintiff spent $69.55 at Dillard's for a product manufactured by Defendant. On January 24, 2025, Plaintiff spent $336.29 at the Polo Factory Store at 7000 Arundel Mills Circle, Hanover, MD 21076.

21.     In total, Plaintiff spent $1,526.50 on Defendant's products in the years 2025 and 2026 to date.[7]

22.     On February 20, 2026, the Supreme Court of the United States ruled that tariffs imposed by President Donald Trump under the International Emergency Economic Powers Act ("IEEPA") were illegal.

23.     Prior to that ruling, tariffs imposed under the IEEPA were collected on imported goods entering the United States. U.S. importers paid those tariffs to U.S. Customs, and the costs were incorporated into the pricing and shipping charges associated with imported goods.

24.     In January 2026, tariff collections reached $30 billion, contributing to a year-to-date total of $124 billion which amounts to an increase of 304% over the same period in 2025. Record levels of tariff revenue were collected by the federal government during the period in which the unlawful tariffs were in effect.

---

[7] Exhibit 1.

25.    Although the Supreme Court ruled that the tariffs were illegal, no automatic refund has been issued. Importers, and those who bore the economic burden of the tariffs, remain without reimbursement.

26.    Plaintiff paid money under the illegal tariffs to Defendant. Plaintiff brings this action on behalf of herself and those similarly situated to recover money wrongfully collected and to obtain appropriate relief permitted by law.

## CLASS ALLEGATIONS

27.    Plaintiff incorporates the previous paragraphs as if fully alleged herein.

28.    Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

29.    The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class:** All individuals residing in the United States who paid unlawful tariffs for any Ralph Lauren products under the International Emergency Economic Powers Act (the "Class").

**New York Subclass:** All individuals residing in New York who paid unlawful tariffs for any Ralph Lauren products under the International Emergency Economic Powers Act (the "New York Subclass").

30.    Collectively, the Class and Subclasses are referred to as the "Classes" or "Class Members."

31.    Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

32.     Plaintiff reserves the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

33.     **Numerosity:** The members of the Classes are so numerous that joinder of all members is impracticable, if not completely impossible. The members of the Classes are so numerous that joinder of all of them is impracticable.

34.     Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes. The questions of law and fact common to the Classes that predominate over questions which may affect individual Class Members, includes the following:

A. **Whether** the tariff-related charges imposed and collected in connection with raised costs on Defendant's products were based on tariffs that the Supreme Court has declared illegal.
B. **Whether** Defendant increased rates, surcharges, or related fees to account for the unlawful tariffs.
C. **Whether** Defendant retained any portion of tariff-related charges collected from customers after the underlying tariffs were invalidated.
D. **Whether** customers, including Plaintiff, are entitled to reimbursement of amounts paid that were attributable to the illegal tariffs.
E. **Whether** Defendant was unjustly enriched by collecting and retaining charges derived from tariffs that were subsequently declared unlawful.

35.     **Typicality**: Plaintiff's claims are typical of those of the other members of the Classes because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Classes.

36.     Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards

of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

37.    **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights, and the damages suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class actions and Plaintiff intends to prosecute this action vigorously.

38.    **Superiority and Manageability**: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

39.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendant would necessarily gain an

7

unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

40.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

41.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

42.    Further, Defendant has acted on grounds that apply generally to the Classes as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

43.    Likewise, particular issues under Rule 42(d)(1) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### COUNT I
**Unjust Enrichment**
*(On behalf of Plaintiff and the Classes)*

44.    Plaintiff incorporates previous paragraphs as if fully set forth herein.

45. Plaintiff and Class members conferred a direct financial benefit upon Defendant by paying tariff-related charges, fees, and surcharges imposed by Defendant.

46. Defendant knowingly received and accepted these benefits.

47. The tariff-related charges Defendant imposed and collected were unlawful and unauthorized.

48. Defendant collected and retained funds to which they were not legally entitled.

49. Defendant retained these funds despite knowing, or having reason to know, that such charges were unlawful, invalid, or subject to refund.

50. It would be inequitable and unjust for Defendant to retain these funds.

51. Plaintiff and Class members suffered economic injury as a result of Defendant's unjust retention of these funds.

52. Defendant was unjustly enriched at the expense of Plaintiff and Class members.

53. Equity and good conscience require that Defendant disgorge all unlawfully obtained funds and make restitution to Plaintiff and Class members.

## COUNT II
### Deceptive Acts or Practices, New York GBL § 349
### (*On behalf of the New York Subclass*)

54. Plaintiff incorporates previous paragraphs as if fully set forth herein.

55. Plaintiff brings this count on behalf of herself and the New York Subclass.

56. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by not issuing refunds for money paid by consumers for their Products to account for the now-illegal tariffs.

57. The foregoing deceptive acts and practices were directed at consumers.

58.    Defendant's conduct is unfair because it causes substantial injury which is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or to competition thus creating a deceptive practice.

59.    On behalf of herself and other members of the Classes, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover damages and reasonable attorneys' fees.

## COUNT III
### Declaratory Judgement
### *(On behalf of Plaintiff and the Classes)*

60.    Plaintiff incorporates previous paragraphs as if fully set forth herein.

61.    Despite the IEEPA tariffs being declared illegal, Defendant has not established a refund process for Plaintiff and Class Members.

62.    As a direct and proximate result of the Defendant's conduct, Plaintiff and Class Members suffered damages.

63.    A controversy exists between the parties, having adverse legal interests, of sufficient immediacy and reality to warrant a declaratory judgment.

64.    Under the Declaratory Judgment Act, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further relief as necessary.

65.    Accordingly, Plaintiff and Class Members are entitled to a declaration that any contract, agreement or other arrangement that permitted Defendant to collect funds from Plaintiffs and Class Members for IEEPA tariff related charges are void.

66.    Plaintiff and Class Members are also entitled to a declaration that any refund Defendant obtains from the U.S. government for IEEPA tariffs must be returned to Plaintiff and Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully requests that the Court enter judgment as follows:

A.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and counsel for Plaintiff as Class Counsel;

B.     For an order declaring the Defendant's conduct violates the statues and causes of action referenced herein;

C.     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D.     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.     For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendant's conduct;

G.     For injunctive relief as pleaded or as the Court may deem proper; and

H.     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

I.     Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

DATE: May 14, 2026

Respectfully submitted,

*/s/ Michael A. Tompkins*
**LEEDS BROWN LAW, P.C**.
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
Email: mtompkins@leedsbrownlaw.com

11

-AND-

Paul J. Doolittle, Esq. (Pro Hac Vice
Forthcoming)
**POULIN | WILLEY | ANASTOPOULO,
LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiff*